LaVina Sevier et al., Appellees, v. School District HC 1,
Hooker County, Mullen, Nebraska, et al., Appellants.
444 N.W.2d 897

Filed September 1, 1989.   No. 87-837.

Philip M. Martin, Jr., of Paine, Huston, Higgins & Martin,
for appellants.

Gregory H. Perry, of Perry, Guthery, Haase, & Gessford,
P.C., and Warren R. Arganbright for appellees.

Boslaugh, Caporale, and Grant, JJ., and Sprague and
Mullen, D. JJ.

Mullen, D.J.
On February 9, 1987, the board of education of school
district HC 1 of Hooker County passed a resolution to close the
elementary school attendance center located in Seneca,
Nebraska. The plaintiffs commenced an action seeking an
injunction to prevent school district HC 1 from closing the
Seneca attendance center until the legal voters served by the
school voted by a majority vote for discontinuance of the
school. The case was tried to the court upon a stipulated set of
facts. The district court found for the plaintiffs and
permanently enjoined the closing of the attendance center until
and unless the school district complied with the majority vote
requirements of Neb. Rev. Stat. § 79-402.07 (Reissue 1987).
Additionally, the district court declared the school district's
resolution to close the elementary school attendance center null

and void. We reverse.

The appellants' assignments of error can be summarized as follows: The trial court erred in finding that the reorganization of school districts was not solely controlled by the reorganization petitions and final order of the county superintendent, and in failing to find that the county reorganization committee lacked legal authority when the committee's action went beyond the express terms of the petitions. Secondly, the court erred in imposing the extreme sanction of injunction against the school district.

In 1965, school district HC 1 in Hooker County at Mullen, Nebraska, and school district No. 6 in Thomas County determined that a school reorganization would be to their mutual benefit. Prior to the reorganization, school district No. 6 had operated an elementary school in Seneca. As a result of the reorganization, school district No. 6 merged into school district HC 1. School district HC 1 continued to operate the elementary school attendance center in Seneca until its attempted closing by the school district, which precipitated this lawsuit.

On May 31, 1965, the board of education of school district No. 6 signed the boundary change petition. On June 1, 1965, the board of education of school district HC 1 signed a similar petition. Although not reflected in the petition, the minutes of the meeting of the board of school district HC 1 includes the following:

> It was moved by John Munn and seconded by Don Mallory to officially declare that there be a K-6 ward school located at Seneca as long as the majority of the patrons of that community, presently designated as School District Number 6 of Thomas County desire a K-6 ward school, and in accepting the merger of the Seneca Districts this is to be a part of the agreement. . . .

The special committee of Hooker and Thomas Counties met for the purpose of reviewing the proposed reorganization on June 10, 1965.

The special committee passed a resolution which contained the following:

> (3) Following is a summary of the terms on which

reorganization is to be made between the reorganized districts:

. . . .

(f) A K-6 elementary school shall be located at Seneca as long as the majority of the patrons of that community so desire.

(4) . . . It is proposed that a K-6 elementary school remain at Seneca. They have an excellent elementary plant. . . .

On June 17, 1965, the reorganization petition proposal was approved by the state school district reorganization committee.

On August 5, 1965, the county superintendent of Hooker County certified that the boundary lines of the school districts had been changed.

As it affects this case, the statutory reorganization structure is unchanged since 1965 and was codified at § 79-402.07 (Reissue 1981), which statutory reference was used by the trial court.

In *School Dist. of Gering v. Stannard*, 193 Neb. 624, 228 N.W.2d 600 (1975), school district boundaries were sought to be changed based upon a petition which did not conform to statutory requirements. A duly adopted resolution of the plaintiff's board of education was filed, and the county superintendent considered them together when he effected the requested change in boundaries. The court said: "Plaintiff contends there was no petition from the board of education filed with the county superintendent and that the resolution is insufficient for this purpose. We disagree. The resolution clearly approves and requests the transfer of the land and it was filed." *Stannard* at 629, 228 N.W.2d at 605. "No petition as such was so filed but a certified copy of the resolution was." *Id.* at 626, 228 N.W.2d at 604.

In *Stannard*, the filed resolution was allowed to stand in the place of a petition. In the instant case, the resolution which was not filed is offered to augment the petitions.

There is no evidence that the special committee of Hooker and Thomas Counties filed the resolution as in *Stannard*, or in any actual or constructive manner notified the state school district reorganization committee. Exhibit E of the stipulation

contains the general plan of reorganization (Form D). At the end of Form D is the statement, "Remarks: A copy of this Form D is being mailed to Henry C. Ebmeier along with copies of the petitions, minutes, resolutions, and other documents relative to this reorganization." The record shows that Henry C. Ebmeier was the State Department of Education consultant for school district reorganization. The stipulation does not indicate that the minutes, resolutions, and other documents were in fact sent to the State Department of Education or received by it. There is no other evidence that the State Department of Education received the minutes and resolution which contain the special committee's agreement to maintain an attendance center at Seneca.

*Warren v. Papillion School Dist. No. 27*, 199 Neb. 410, 418, 259 N.W.2d 281, 286 (1977), states, "The petitions and the order of the county superintendent are the official public records of the merger . . . ." The resolution may state underlying reasons for the proposed merger, but it cannot stand in the place of a petition filed according to statutory mandate.

Supporting this rationale is *Osmera v. School Dist. of Seward*, 216 Neb. 261, 343 N.W.2d 886 (1984), in which the school districts of Ulysses and Seward filed petitions for consolidation of the Ulysses school district into the Seward school district. Cooperative Reorganization Commitments were entered into by certain Class I districts and Seward. Ulysses did not participate in the negotiations, and the commitments were not incorporated into the petitions. In affirming the trial court's decision denying injunctive relief, the court stated: "Neither Ulysses' nor Seward's petition refers to the Cooperative Reorganization Commitments . . . . Further, neither petition contained any other condition or exception." *Osmera* at 263, 343 N.W.2d at 889.

As noted in *Stannard*, there are instances when the school reorganization statutes would not be strictly construed. However, in those instances other documents were filed which gave notice to all of the intent of the parties.

The consequences of the evidence failing to demonstrate notice to the State Department of Education are reflected in *Warren, supra,* in which the plaintiffs sought to enforce an oral

promise of the Papillion school district to provide bus service for students in the Ireland school district. Although the districts had merged, the court held that the Papillion school district could not be estopped from terminating the bus service, because the oral promise was not a part of the written records of the reorganization. As in *Warren*, there is no evidence showing that those persons empowered by statute to make decisions regarding the reorganization had the specific agreement before them now sought to be enforced.

The plaintiffs further contend that the defendants should be estopped from closing the attendance center since the agreement has been relied on since 1965.

The elements constituting equitable estoppel are recited in *Osmera v. School Dist. of Seward, supra* at 266, 343 N.W.2d at 890, which states that the elements are:

> "As to the party estopped, '* * * (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive, of the real facts.' As to the other party, '* * * (4) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (5) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (6) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice.' " *Pester v. American Family Mut. Ins. Co.*, 186 Neb. 793, 798-99, 186 N.W.2d 711, 714 (1971). See *County of Scotts Bluff v. Hughes*, 202 Neb. 551, 276 N.W.2d 206 (1979).

The defendants did not engage in conduct which would amount to a false representation or conceal a material fact.

" 'Ordinarily, the doctrine of equitable estoppel cannot be invoked against a municipal corporation. . . . Exceptions are made only where right and justice so demand. . . .' " *Osmera v.*

*School Dist. of Seward, supra* at 265, 343 N.W.2d at 890; *Christian v. Geis*, 193 Neb. 146, 225 N.W.2d 868 (1975); *Warren v. Papillion School Dist. No. 27, supra.*

It is undisputed that all of the facts relating to the merger were disclosed and understood by the parties. The doctrine of equitable estoppel is inapplicable.

Since the case is resolved on appellants' first assignment of error, discussion of the remaining assignment of error is unnecessary.

The cause is remanded to the district court with directions to dissolve the permanent injunction imposed on the defendants and to render judgment for the defendants.

REVERSED AND REMANDED WITH DIRECTIONS.